IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD BROWN, | |
| Plaintiff, | |
| v. | Case No. 24-CV-02338-SPM |
| BRENDAN KELLY, et al., | |
| Defendants. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Before the Court is a Motion to Dismiss filed by Defendant Brendan Kelly. (Doc. 21). Having been fully informed of the issues presented, Kelly's Motion to Dismiss is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Donald E. Brown is a resident of Williamson County, Illinois. Defendant Brendan Kelly is the Director of the Illinois State Police ("ISP") and Defendant William Huddleston is a police officer with the Marion Police Department. (Doc. 6, ¶¶ 1–3). This lawsuit arises from an incident that occurred on private property on April 23, 2025. (*Id.*, ¶ 5). Brown alleges that he called Marion Police on the date in question to make a "trespass complaint about a homeless person present on private property of which he had in interest." (*Id.*). Plaintiff states that he was present on the property and that he had a pistol "holstered and lawfully carried" on his hip. (*Id.*, ¶ 8). Plaintiff states that he informed Defendant Huddleston (who arrived on the scene) that he had a concealed carry license and was either on

Plaintiff's own property or had permission from the landowner to be there. (*Id.*, ¶ 9). Plaintiff alleges that Huddleston arrested him "for aggravated unlawful use of a firearm, without probable cause" and confiscated his pistol. (*Id.*, ¶¶ 10–11). Brown alleges that his arrest was unlawful because he "was not brandishing said firearm" and that he was indicted in Williamson County Case No. 2024CF361 for aggravated unlawful use of weapons. (*Id.*, ¶¶ 10–11).

Brown filed the instant lawsuit with this Court on October 19, 2024. (Doc. 1). He filed a First Amended Complaint on November 15, 2024. (Doc. 6). His First Amended Complaint alleges six claims: (1) a Fourth Amendment and Fourteenth Amendment claim against Huddleston pursuant to 42 U.S.C. § 1983; (2) a Fourteenth Amendment procedural due process claim against Director Kelly pursuant to 42 U.S.C. § 1983; (3)–(5) Second Amendment constitutional challenges to 430 ILL. COMP. STAT. 65/8(n) as related to "persons who are merely charged with a felony, as opposed to being convicted of a felony" and seeking to enjoin Director Kelly's revocation of FOID cards; and (6) a constitutional challenge to 430 ILL. COMP. STAT 65/9.5 arguing that Director Kelly "is requiring Plaintiff to waive his Fifth Amendments rights in order to exercise his Second Amendment Rights" in relation to the required firearms disposition record form. (*Id.*).

Defendant Huddleston filed an Answer on January 24, 2025. (Doc. 20). Director Kelly filed the instant Motion to Dismiss on January 31, 2025 (Doc. 21); Plaintiff Brown filed a Response on February 12, 2025.

**APPLICABLE LAW AND LEGAL STANDARDS**

**I.     Federal Rule of Civil Procedure 12(b)(1)**

This Court has an independent duty to ensure that it has subject matter jurisdiction to hear cases brought before it. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994). The Supreme Court has long instructed that "federal courts, as courts of limited jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction." *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). Subject matter jurisdiction cannot be waived and may be "raised *sua sponte* by the court at any point in the proceedings." *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir. 1994). In other words, this court cannot hear this action if it lacks subject matter jurisdiction, established through diversity citizenship of the parties under 28 U.S.C. § 1332 or pursuant to a federal question under 28 U.S.C. § 1331. Plaintiffs have the burden to prove that subject matter jurisdiction exists. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Additionally, standing to bring suit is one of the controlling elements in the definition of a case or controversy in accordance with Article III. *See ASARCO Inc. v. Kadish,* 490 U.S. 605, 613 (1989); *see also* U.S. CONST. art. III, §§ 1–2. The plaintiff must (1) have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation and quotation marks omitted). Next, "there must be a causal connection between the injury and the conduct complained of," meaning that "the injury has to be "fairly . . . trace[able] to the challenged action

of the defendant." *Id.* at 560–61 (*quoting Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (citing *Simon* at 38, 43); *see Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013); *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). "Unless the plaintiff has standing, a court cannot reach the merits of his case." *Beauchamp v. Sullivan*, 21 F.3d 789, 790 (7th Cir. 1994). Additionally, "there is an exception for the frivolous case. A frivolous case does not engage the jurisdiction of the court. So frivolousness is an alternative jurisdictional ground for dismissal to lack of standing." *Id.* (citing *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *Crowley Cutlery Co. v. United States*, 849 F.2d 273 (7th Cir. 1988)). If the plaintiff cannot demonstrate that he or she has standing to sue, Federal Rule of Civil Procedure 12(b)(1) directs that the matter must be dismissed for lack of subject-matter jurisdiction.

## II.   Federal Rule of Civil Procedure 12(b)(6)

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099

(7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

When assessing Brown's Complaint, the Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013). Conclusory statements and labels, however, are not enough. *Id.* The complaint must allege enough facts to "state a claim to relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). That means "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). "[I]nstead, the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404.

Director Kelly argues that Counts II–VI should be dismissed under Federal Rule 12(b)(1) or, in the alternative, under Rule 12(b)(6). (*See* Doc. 21, pp. 2–3). He argues that Counts II–V are now moot due to events that occurred after the First Amended Complaint was filed and that Count VI is unripe, therefore depriving this Court of subject-matter jurisdiction. (*Id.*). Kelly argues that Counts II–V seek reinstatement of Brown's FOID card, which he claims may be reactivated after the felony charges against Brown were dismissed in October 2024. (*Id.*, p. 5). He argues that such a ruling is consonant with other Illinois federal courts which have ruled on the same issue. (*Id.*, p. 6 (collecting cases)). He argues that any exceptions to the mootness doctrine (e.g., voluntary cessation or that this a case "capable of repetition yet evading review") do not apply here. (*Id.*, pp. 6–8 (citing Doc. 6, p. 8)). Kelly asserts that Brown lacks standing to sue to enjoin FOID card revocations for other individuals not named in his lawsuit. (*Id.*, pp. 8–10). Director Kelly also argues that Count VI is unripe because "Plaintiff generally alleges that he wishes to possess a FOID Card, but that ISP is requiring him to fill out a form that could lead to self-incrimination as a precondition for receiving a FOID Card." (*Id.*, p. 10 (citing Doc. 6, pp. 18–20)). He also argues that Counts IV and V are barred by the Eleventh Amendment, as Brown challenges purported violations of his rights that are guaranteed by the Illinois Constitution. (*Id.*, p. 11–12).

Additionally, Director Kelly argues that the entire First Amended Complaint should be dismissed for failure to state a claim under Federal Rule 12(b)(6) because it "offers only conclusory legal statements and speculative allegations" and "is so disorganized and incoherent that it is unintelligible at points." (*Id.*, p. 12 (citing FED.

R. CIV. P. 8, 10)). Notably, the paragraphs are not numbered consecutively (i.e., the paragraph numbering restarts for each count), two counts are labeled as Count I, and Counts V and VI are labeled as "Count V Count III" and "Count VI Count III." (*Id.*, p. 13 (citing Doc. 6, pp. 1, 9, 16, 18)).

Plaintiff Brown responds that "[t]he facts in this case are simple" and argues that "[u]nless this is nipped in the bud, it will only be a matter of time before these same 'law enforcement' officers again arrest and charge Plaintiff, with something that is not actually a crime, or which there is no actual evidence of." (Doc. 22, p. 2). While conceding that Director Kelly's Eleventh Amendment arguments are correct with respect to Counts IV and V, he argues that Counts II and III are not moot (because he still doesn't have a FOID card) and that he does, indeed, have standing (because "Plaintiff *personally* suffered this indignity"). (Doc. 22, pp. 4–6). He also argues that Count VI is not unripe because "Defendant Kelly sent a document to Plaintiff, demanding he fill out a 'firearms disposition' record, and turn it in to the state" and because his FOID card has still not been renewed. (*Id.*, pp. 6–7). Regarding his First Amended Complaint as a whole, Plaintiff concedes that he is willing to renumber the paragraphs in his pleading, but argues that it is not necessary. (*Id.*, p. 8). He also argues that "[e]ach count speaks to what Defendant did wrong, why it was wrong, the constitutional violation by citation, and seeks redress," that "[e]ach claim is at least plausible, and that "[n]othing more is required." (*Id.*).

First, as Plaintiff concedes that Counts IV and V are, indeed, barred by the Eleventh Amendment (*see* Doc. 22, p. 4), Counts IV and V shall be dismissed with prejudice. Additionally, this Court notes that Defendant Huddleston has not filed a

motion to dismiss Count I, meaning that the Fourth and Fourteenth Amendment unlawful arrest claim against him will proceed into discovery.

First, Brown lacks standing to sue on behalf of hypothetical Illinois citizens. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ("First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (cleaned up)). Brown requests for this Court to "enjoin Defendant Kelly, as well as his successors in office and authority, from suspending, revoking or otherwise invalidating any FOID cards based on 430 ILCS 65/8(n), as it presently exists, for persons merely charged, but not convicted of any felony charge" (Doc. 6, p. 8) and to "[d]eclare 430 ILCS 65/8(n), unconstitutional, as applied to persons who are merely charged with a felony, as opposed to being convicted of a felony, and . . . Enjoin Defendant Kelly, as well as his successors in office and authority, from suspending, revoking or otherwise invalidating any FOID cards based on 430 ILCS 65/8(n), as it presently exists, for persons merely charged, but not convicted of any felony charge." (Doc. 6, p. 11). As an individual plaintiff, Brown cannot assert claims on behalf of hypothetical, unnamed Illinois citizens. Therefore, any claims he brings on behalf of other Illinois citizens must be dismissed.

Moving forward, Plaintiff alleges that Count II "is brought under 42 USC 1983, for violation of procedural due process under the 14th Amendment" and that he "lacks an adequate remedy at law." (Doc. 6, pp. 7–8). He brings Count III pursuant to the Second Amendment as applied to the states via the Fourteenth Amendment. (*Id.*, p. 9). He argues that Director Kelly uses the interplay of 18 U.S.C. § 922(n) and 420 ILL. COMP. STAT. 65/8(n) "as a total ban on the possession of firearms by persons who are merely accused of a felony." (Doc. 6, p. 10). Brown claims in his Declaration that he paid the fees to renew his FOID card in May 2024, that the Illinois State Police accepted those fees, but that his card has not been renewed because of the suspension of his FOID card due to the now-dismissed felony charge. (Doc. 22, Ex. A).

Director Kelly does not dispute that Brown's FOID card was suspended. (*See* Doc. 21, p. 5). He provides a Declaration from Captain Jeffrey Yenchko, the Bureau Chief of the Firearms Services Bureau at the Illinois State Police. (*See* Doc. 21, Ex. A). Yenchko states that Brown's FOID card was suspended on May 17, 2024 in accordance with 430 ILL. COMP. STAT. 65.8.2–8.3 and that the suspension was lifted on January 28, 2025. (*Id.*, p. 2). Yenchko states that Plaintiff's FOID card was set to expire on November 1, 2024 and that he must reapply in accordance with the FOID Act. (*Id.*). In opposition, Brown argues that for him "to 'reapply' at this point would cost him between $10.00 and $11.00" and that "[a]t a minimum, the ability and desire to avoid a $10 payment is enough to keep this case alive, as while Plaintiff may not be able to sue Mr. Kelly for money damages, and recover his $11 paid, he can and has most assuredly sued to get the FOID card be already paid $11 for." (Doc. 22, pp. 4–5). Brown continues, arguing that:

> Even if this is not an argument over $10.00, that Plaintiff submits he does not have to pay twice, it is still an argument over $10, that Plaintiff submits he does not have to pay twice, and but for suspension, for a frivolous and malicious felony charge against him, he would not be asked to pay twice.

(Doc. 22, p. 6).

While Director Kelly insists that this matter is now moot because the felony charges have been dismissed and because Brown can now apply for a new FOID card, Brown insists that he *already* applied for renewal of his FOID card on May 6, 2024, including paying the appropriate fees (*see* Doc. 22, Ex. 1, p. 1) and that he should not have to reapply. This matter thus hinges on the interplay between the suspension of a FOID card with the renewal process. While Brown insists that his FOID card was "revoked," Director Kelly indicates that it was merely "suspended." The FOID Act is clear that, if a FOID card is *revoked*, the individual must reapply for a FOID card. *See* 430 ILL. COMP. STAT. 65/7(b) ("If a renewal application is submitted to the Department before the expiration date of the applicant's current Firearm Owner's Identification Card, the Firearm Owner's Identification Card shall remain valid, unless the person is subject to or becomes subject to revocation under this Act." (emphasis added)). Additionally, the Illinois Administrative Code states that:

> A FOID Card will remain conditionally valid during the processing period provided that a completed renewal application with the required fees, including but not limited to, applicable processing fees, have been submitted to ISP prior to its expiration pursuant to Section 5 of the Act *and the FOID Card is not subject to revocation pursuant to Section 8 or 8.2 of the Act*. . . .

ILL. ADMIN. CODE tit. 20, § 1230.30(b)(1) (emphasis added); *see id*. § 1230.30(b)(3) ("Any conditionally renewed FOID Card shall be deemed valid for the purposes of

possessing, transferring, and purchasing ammunition and firearms, unless the FOID Card is subject to revocation or suspension under Section 8 of this Act."). To review, Brown paid to renew his card on May 6, 2024, his FOID card was suspended on May 17, 2024 and then expired on November 1, 2024. The suspension was lifted on January 25, 2025.

Two of the cases Director Kelly cites are not directly applicable to the instant factual situation, as the plaintiffs actually received their FOID cards during the litigation process. (*See* Doc. 21, p. 6 (citing *Marszalek v. Kelly*, No. 20-CV-04270, 2021 WL 2350913 (N.D. Ill. June 9, 2021); *Thomas v. Kelly*, No. 20-CV-0734, 2021 WL 2350931 (N.D. Ill. June 9, 2021))). In *Avitia v. City of Chicago*, No. 23 CV 15957, 2024 WL 2274101 (N.D. Ill. May 20, 2024), the district court determined that the plaintiff's request for injunctive relief was moot after the plaintiff "reapplied for his FOID and CCL following the dismissal of his case" and later conceded that "the State of Illinois and Brendan F. Kelly have issued and/or restored Plaintiff's FOID and CCL." *Id.* at *1, *3; (*see* Doc. 21, p. 6 (citing *Avitia*)).

Here, Brown's suspension has been lifted and he is able to reapply for a FOID care, yet refuses to do so. As discussed above, this Court reads the relevant statute and administrative code provisions together as indicating that any automatic renewal process was rendered invalid by the suspension of Brown's FOID card. As the suspension lasted until after the expiration of his previous FOID card, he must now reapply. Moreover, while neither party discusses it, this Court notes that 430 ILL. COMP. STAT. 65/10 states that:

> Whenever an application for a Firearm Owner's Identification Card is denied or whenever such a Card is revoked or seized as provided for in Section 8 of this Act, the aggrieved party may (1) file a record challenge with the Director regarding the record upon which the decision to deny or revoke the Firearm Owner's Identification Card was based under subsection (a-5); or (2) appeal to the Director of the Illinois State Police through December 31, 2022, or beginning January 1, 2023, the Firearm Owner's Identification Card Review Board for a hearing seeking relief from such denial or revocation . . . .

This Court finds it odd that Brown brings a Fourteenth Amendment due process claim against Director Kelly when an administrative review process is available to him. Moreover, other district courts in the Seventh Circuit have there to be no due process concerns associated with Illinois's procedures for revocation of FOID cards. *See Rhein v. Coffman*, 118 F. Supp. 3d 1093, 1102 (N.D. Ill. 2015), *aff'd*, 825 F.3d 823 (7th Cir. 2016). While Brown is not required to exhaust administrative remedies prior to filing a § 1983 lawsuit in federal court, his argument that he should not have to pay $10 to obtain a new FOID card when he is able to appeal the suspension of his FOID card is curious. This Court will not override the process created by the Illinois Legislature for issue of FOID cards. Because Brown is now able to obtain a new FOID card, this Court holds that Counts II and III are not redressable by this Court via injunctive relief and must be dismissed.

Finally, Count VI is clearly unripe. The FOID Card & Firearms Disposition Record form that Plaintiff Brown has refused to file is no longer applicable, as it is only required upon *revocation* of a FOID card and, moreover, because he failed to complete it, he has now been charged with a misdemeanor offense for failure to surrender his weapons while his FOID card was suspended. *See* Case No. 2024CM391 (Ill. Cir. Ct.); (Doc. 22, Ex. 1, p. 11). Plaintiff Brown's FOID card is no longer in a

suspended status; he is free to reapply for a FOID card and, thus, is not in danger of self-incrimination unless he actually reapplies. This Court is not moved by Plaintiff's arguments that his claim is analogous to that in *Haynes v. United States*, 390 U.S. 85 (1968). *United States v. Scherer*, 523 F.2d 371, 375 (7th Cir. 1975) expressly stated that "[t]he objectionable feature of the [firearms registration] statutes found in *Marchetti* and the related cases of *Grosso v. United States*, 390 U.S. 62 (1968), and *Haynes v. United States*, 390 U.S. 85 (1968), was that the act of registration itself constituted an Ipso facto confession of criminality." (citing *Marchetti*, 390 U.S. 39). In *Scherer*, the Seventh Circuit ruled that "the mere act of recording the sales of firearms or engaging in their transfer does not automatically subject a licensed firearms dealer to criminal penalties" because the individual is not "subject to the incriminating straight-jacket of alternatives created in the cases above." 523 F.2d at 375.[1]

Here, Brown's FOID card was revoked on May 17, 2024 (*see* Doc. 21, Ex. 1, p. 2) and Brown was required to complete the FOID Card & Firearms Disposition Record (Doc. 22, Ex. 1, pp. 11–12) within 48 hours of receipt. Brown was then charged with misdemeanor possession of firearms without a FOID card months later. *See* Case No. 2024CM391 (Ill. Cir. Ct.). He cannot create a Fifth Amendment self-incrimination issue by his own apparent failure to complete the form and transfer his weapons in accordance with established Illinois law; there was no self-incrimination issue at the time he received the form; his refusal to file the form (and to transfer his

---

[1] This Court discussed the interplay between firearms registration statutes and Fifth Amendment self-incrimination at length in *Barnett v. Raoul*. *See* No. 23-cv-00209-SPM (Doc. 226). The Motion for Partial Summary Judgment in that case was filed by the same attorney representing Plaintiff Brown in the instant suit.

weapons) created this controversy. Therefore, this claim must also be dismissed as it relates to the FOID Card & Firearms Disposition Record form sent to him in May 2024. Should he be compelled to file another of these forms if and when he reapplies for a FOID card, he may allege a separate claim as related to that form, specifically. *See Rogers v. Hacker*, No. 3:20-CV-1116-DWD, 2023 WL 5529812, at *13 (S.D. Ill. Aug. 28, 2023); (Doc. 21, pp. 10–11 (citing the same)).

## CONCLUSION

For the reasons set forth above, Defendant Brendan Kelly's Motion to Dismiss (Doc. 21) is **GRANTED**. As leave to amend would be futile, Counts II–V against Defendant Brendan Kelly are **DISMISSED with prejudice**. Count VI is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to terminate Director Kelly as a Defendant in this case. Count I of Plaintiff Donald E. Brown's Amended Complaint against Defendant William Huddleston will move forward into discovery.

**IT IS SO ORDERED.**

**DATED:  April 7, 2025**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**